Ora G. Gillies, Plaintiff, v. The Preferred Accident Insurance Company of New York, Defendant.

(Supreme Court, New York Trial Term, February, 1920.)

Insurance (accident) — classification of risks — contracts — death benefits — killed in battle.

> The holder of a policy insuring him against death resulting from accidental means, in his application warranted that his occupation was that of " advertising " and that his duties were " soliciting and office work." When the war broke out he was commissioned as a captain in the United States army and while leading his men in France he was killed on the battle field by an exploding shell of the enemy. In the classification of risks in force at the time the policy was issued, in consideration of the reduced premium applicable to the risk, there

was this declaration: "Army officer in field service not insurable." In an action on the policy to recover death benefits in the sum of $7,500, *held,* that the warranty of the insured and the classification of risks were a part of the contract of insurance and were binding upon the insured.

The insured having by service in the army assumed an occupation extra-hazardous, must be deemed to have agreed that such occupation, within the meaning of the policy, was one rated in a more hazardous class than the premium which he paid for his policy covered, and that under the "extra-hazardous" classification, plaintiff was entitled to judgment in the sum of $1,875.

ACTION to recover certain death benefits.

Ware, Kaplan & Kosman, for plaintiff.

William Ryan, Jr., for defendant.

COHALAN, J. Plaintiff sues to recover certain death benefits in the sum of $7,500 under a policy of insurance dated October 4, 1908. It is undisputed that at the time of the death of the insured the policy was in full force and effect. In the application for insurance the insured gave his occupation as "advertising," and the duties thereof as "office work and solicitor." When the war broke out the insured was commissioned as a captain in the United States Army and was sent abroad. On September 4, 1918, while leading his men on the battlefields of France, he was struck by an exploding shell of the enemy and killed. The plaintiff asserts that the sole intention of the decedent was to remain in the advertising business, and that he never intended at any time to change his occupation. The policy insured him against death as "resulting directly or independently from bodily injury, effected solely through accidental means." The defendant refuses to pay the amount claimed by the plaintiff under the terms of the policy for these reasons: (1) That the

deceased did not meet his death through accidental means, and (2) that the insured had changed his occupation when he became a part of the American Expedition Forces in France. The defendant also relies on section 1 of the policy, which reads as follows: "If the insured shall be injured, fatally or otherwise, in any occupation classified by the company as more hazardous than that stated in the schedule of warranties hereafter contained, he or his beneficiary, as the case may be, shall be paid only the amount fixed for such increased hazard in accordance with the classification of the risks by the company. Injuries sustained while engaged in games or sports for recreation only or while performing the ordinary duties about the residence shall not be prorated hereunder." The defendant, as its name implies, is engaged in the business of insuring only such persons as are by reason of their stated occupation to be entitled to " preferred " classification. Defendant was not informed until September 9, 1918, that the insured was in the service of the army in France. On September 19, 1918, the defendant wrote to the brother of the insured as follows: " Under the circumstances it seems best to retire his (insured) policy, and we are accordingly sending to his address notice of cancellation, with check for amount of unearned premium." While this correspondence occurred after the death of the decedent, neither party at that time knew of that unfortunate circumstance. The representative of the insured accepted the unearned premium, evidently understanding that a soldier was not insurable. The plaintiff stresses the patriotic impulse that induced the insured to hastily abandon his work-a-day pursuits and to eagerly become one of the great army that crossed the seas to fight to end all forms of autocracy and to " make the world safe for democracy." The

beneficiary contends that the insured was killed in the performance of a patriotic duty, and that public policy requires the success of the plaintiff in this suit. But however high this soldier's conception of his duty to his country was, the parties herein are confronted by a contract the terms of which are binding upon the parties irrespective of the reasons that may now be urged to disregard them. It is true that the defendant could voluntarily change his status or his occupation, but could he by any such act change the situation of the company? I do not think so. If he were drafted, then his choice might be said not to have been voluntarily made, and the beneficiary might be in a more advantageous position in pressing her claims for relief. He would not have had anything to do in that event with changing his occupation; that would have been done by a governmental power, over which the soldier had no control. It would have substituted its will for his will, and he would have been constrained to obey the higher authority. The government wisely and liberally provided insurance for soldiers entering the service. There was no distinction as between the volunteer or the drafted soldier. It had in mind not only the extra-hazardous risks, but the fact that insurance companies would in many cases cancel policies, as the defendant company apparently would have done, had it known that the decedent had entered the service while still protected by its policy. I do not feel that public policy justifies the disregard of the terms of a contract freely made by the parties thereto. The plain terms of this contract negative such a result. In the classification of risks in force in 1908, at the time the policy was issued, there was this declaration: "Army officer in field service not insurable." This was a notification to the insured that the company did not insure army

officers in field service, and that if one was so injured, or died while engaged as an army officer in field service, no liability would attach to the defendant under the policy issued. In the schedule of warranties signed by the decedent he warranted that his occupation was that of advertising, and that the duties of his occupation were fully described by the words " soliciting and office work." Under this warranty the defendant classed the risk as preferred and issued its policy in consideration of the reduced premium applicable to that risk. The provisions of the policy, together with the warranties, must be assumed to have been read by the insured. But whether or not he read them, nevertheless they are binding upon him, and put him upon inquiry as to what was the classification of risk by the company. Moreover, the warranties and these classifications became as much a part of the contract as if they were printed in it. *Hook* v. *Michigan Mutual Life Ins. Co.,* 44 Misc. Rep. 478, 483; affd., 139 App. Div. 922; *Enthoven* v. *American Fidelity Co.,* 128 N. Y. Supp. 805; affd., 150 App. Div. 928; 211 N. Y. 561; *Quinlan* v. *Providence Washington Ins. Co.,* 133 id. 356, 364. In spite of this provision the company has agreed to be bound by partial liability under certain conditions. I hold, from a careful study of the facts, that the insured may be properly classed as an extra-hazardous risk under the defendant's classification of 1908, referred to in section 1, Policy No. 719,682. In this respect only the contract of insurance may be construed liberally for the insured, and strictly as against the company. *Broadway Realty Co.* v. *Lawyers Title Ins. & Trust Co.,* 171 App. Div. 792; *McNally* v. *Phœnix Ins. Co.,* 137 N. Y. 389; *Sergeant* v. *Liverpool & London & Globe Ins. Co.,* 155 id. 349. The insured, by service in the army, assumed an occupation extra-hazardous. He must be deemed,

therefore, to have known and agreed that this occupation, within the meaning of the policy, was an occupation rated in a more hazardous class than the premium which he paid for his policy covered. Under the "extra-hazardous" classification of the year 1908 the plaintiff is entitled to a judgment in the sum of $1,875.

Judgment accordingly.